UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

BECKY COOPER,                       )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )   Case No. 1:05-CV-111
                                    )
                                    )   Chief Judge Curtis L. Collier
LIFE INSURANCE COMPANY OF NORTH     )
AMERICA; ACE INA LONG TERM          )
DISABILITY PLAN.                    )
                                    )
        Defendants.                 )

**MEMORANDUM**

Before the Court is Plaintiff Becky Cooper's ("Plaintiff") motion for judgment on the record (Court File No. 91) and accompanying memorandum (Court File No. 92), requesting this Court issue an order requiring Defendants to adopt Plaintiff's methodology for calculating her long term disability benefits. Defendant Life Insurance Company of North America ("Defendant" or "LINA") filed a response in opposition to Plaintiff's motion (Court File No. 93). The parties also appeared before the Court for oral arguments on Wednesday, February 16, 2011. For the following reasons, the Court will **DENY** Plaintiff's motion (Court File No. 91).

I.  **BACKGROUND**

    A.  **Relevant Facts**

Plaintiff was employed by ACE INA Holdings, Inc. as a claims adjuster, and she was enrolled in the ACE INA Long Term Disability Plan (the "Plan") (Court File No. 1). Under the Plan, ACE was designated as the employer and Plan Administrator. Life Insurance of North America ("LINA") was designated as the Claims Administrator (Court File No. 23-1).

Plaintiff became disabled in January 2000 when her lower back was injured in a work-related incident while on a business trip (Court File No. 58). Her physician evaluated her back and told Plaintiff she suffered from scoliosis, spondylolisthesis, nerve entrapment, and degenerative disc disease. Plaintiff continued work until May 2002, when she had a partial lumbar laminectomy performed. Between May and October of the same year, Plaintiff received short-term disability benefits from LINA in the amount of $541.00 per week (*id.*; Court File No. 93). Prior to termination of her short-term disability benefits in 2002, Plaintiff applied for long-term disability ("LTD") benefits (Court File No. 58). Her claim for LTD benefits was denied (*id.*).

In May 2004, Plaintiff applied for Social Security disability ("SSDI") benefits (*id.*). The Social Security Administration determined Plaintiff had become disabled on May 3, 2002, the date of her back surgery. Plaintiff began receiving SSDI benefits in June 2004. Despite this, LINA denied Plaintiff's appeals for LTD benefits (*id.*).

### B. Procedural History

Plaintiff filed an action in this Court on April 21, 2005 seeking LTD benefits from Defendants, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 (Court File No. 1). On May 30, 2006, following briefing and oral argument, this Court ruled in favor of Defendants and dismissed Plaintiff's complaint (Court File No. 49). Plaintiff appealed to the United States Court of Appeals for the Sixth Circuit, which reversed this Court's judgment, holding in favor of Plaintiff (Court File Nos. 58, 59). The Sixth Circuit remanded the case back to this Court, finding Plaintiff had "clearly established that she [was] disabled under the Plan" (Court File No. 58). As a result, this Court ordered Defendants to calculate and award Plaintiff benefits consistent with the Sixth Circuit's opinion (Court File No. 82). Specifically, LINA

was required to award Plaintiff benefits "retroactive to the date on which [her] short-term disability benefits ceased" (Court File No. 58).

The parties now dispute whether Defendant's calculation of Plaintiff's net LTD benefits, after she received a worker's compensation settlement, is correct. Accordingly, this Court granted Plaintiff's motion to reopen the case to allow Plaintiff the opportunity to challenge Defendant's benefits calculation (Court File No. 86).

### B. Calculation of Plaintiff's LTD Benefits

Under the Plan, "[t]he Monthly Disability Benefit for any month [an employee] is [d]isabled is the Gross Disability Benefit minus Other Income Benefits and the Calculation for Optimum Ability." Administrative Record ("AR") at 243. The "Gross Disability Benefit" is "[t]he lesser of 60% of an [e]mployee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit." *Id.* "Other Income Benefits" are defined as "any benefits listed in the Other Income Benefits provision" and include Social Security disability benefits ("SSDI benefits") and worker's compensation benefits. *Id.* at 243, 247-48. The Plan also states if "Other Income Benefits" are paid in a lump sum, such "lump sum will be prorated over the period for which the sum is given. If no time is stated, the lump sum will be prorated over five years." *Id.* at 248.

The parties agree Plaintiff's monthly gross LTD benefit is $3,240.00 (Court File Nos. 92, 93). Plaintiff began receiving retroactive SSDI benefits beginning on February 1, 2003 in the amount of $1,804.00 (Court File No. 92). On December 14, 2004, Plaintiff settled her worker's compensation claim for $90,000.00, or for a net proceed of $71,614.57, in the Chancery Court of Hamilton County, Tennessee (*id.*; Court File No. 93).

In the order entered, the Chancery Court stated as follows:

> The Court finds that the employee's permanent partial disability, as agreed by the parties, is 41.5% to the body as a whole, and that the insurer is willing to pay and the employee is willing to accept Ninety Thousand and no/100 Dollars ($90,000.00) for her permanent partial disability, which equates to 41.5% permanent partial disability to the body as a whole or 166.35 weeks of benefits at the weekly rate of $541.00.

AR at 380. "For the purposes of Social Security offset," the Chancery Court also made the following "findings and fact and conclusions of law":

> . . . [U]pon payment of the attorney's fees of Eighteen Thousand and no/100 Dollars ($18,000.00) and litigation expenses of Three Hundred Eighty-Five and 43/100 ($385.43), the Plaintiff/Employee shall receive a net amount of Seventy-One Thousand Six Hundred Fourteen and 57/100 Dollars ($71,614.57) which represents Fifty-Five and 42/100 Dollars ($55.42) per week over the remaining life expectancy of Plaintiff and represents income replacement. This provision is for Federal Social Security purposes only and not for any other purposes.

*Id.* at 382. As a result of the worker's compensation settlement order entered into by the Chancery Court, the parties now disagree about how LINA should calculate Plaintiff's net LTD benefits in light of the lump sum worker's compensation settlement.

LINA argues the period for which the lump sum was given can be found in the worker's compensation settlement order. Indeed, LINA asserts "the period and the weekly rate are both defined in the [Chancery Court's] Final Order as 166.35 weeks and $541.00 [], respectively"; therefore, "it is clear that the Final Order contains two offset rates" (Court File No. 93 at 3, 11). However, because Plaintiff only received a net amount of $71,614.57, LINA contends the period over which the lump sum must be prorated should be reduced to a period of 132.37 weeks, instead of 166.35, to ensure a collection of only $71,614.57 (*id.*). In other words, LINA argues the proper method of calculating Plaintiff's monthly LTD benefits is to offset the worker's compensation

4

settlement at a weekly rate of $541.00 ($90,000.00/166.35 weeks or $71,614.57/132.37 weeks), which was the original amount of Plaintiff's temporary worker's compensation benefits before she settled her claim (*id.*).

In contrast, Plaintiff argues the proper method of calculating the offset is to prorate the worker's compensation settlement over the remainder of Plaintiff's life expectancy or 24.85 years at the time the Chancery Court entered its order (*see* Court File No. 92 (referencing AR at 382)). While Plaintiff's acknowledges the "lifetime pro-ration of the worker's compensation settlement funds [was] specifically crafted to minimize or eliminate the offset to Social Security benefits," she believes the worker's compensation settlement was intended to be permanent income replacement; therefore, the language in the Chancery Court order should be consistently applied to both SSDI benefits and the worker's compensation benefits (Court File No. 92 at 6, 7). Plaintiff asserts any other manner of offsetting the worker's compensation settlement is "inconsistent with the language of the policy, with the language of the worker's compensation settlement, and with general principles of fairness and equity" (*id.* at 5).

## II. STANDARD OF REVIEW

A challenge to an ERISA plan's benefits determination "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When discretionary authority is granted, as in this case, "the

5

highly deferential arbitrary and capricious standard of review is appropriate."[1] *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (quotation marks and citation omitted). The arbitrary and capricious standard is the "least demanding form of judicial review of administrative action . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Abbott v. Pipefitters Local Union No. 522*, 94 F.3d 236, 240 (6th Cir. 1996) (quoting *Perry v. United Food & Commercial Workers Dist. Unions 405 & 422*, 64 F.3d 238, 242 (6th Cir. 1995)).

Generally, when "interpreting a plan, the administrator must adhere to the plain meaning of its language as it would be construed by an ordinary person." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). If the plan administrator's interpretation of the plan is "rational," then the Court should accept the interpretation "even in the face of an equally rational interpretation offered by the participants." *Id.*

While the arbitrary and capricious standard is highly deferential, it is not "without some teeth" and courts should not be mere "rubber stamps" for plan decisions. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). An administrator's decision should not be upheld where there is an absence of reasoning in the record to support it. *Id.* Furthermore, a conflict of interest is present when the insurer decides whether benefits should be awarded and pays for those benefits. *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 299 (6th Cir. 2005). Although the conflict of interest does not alter the standard of review, it is a factor that must be considered

---

[1]"LINA is not the administrator of the Plan but it was the entity that made the initial and subsequent decisions to deny Plaintiff's claim for benefits" (Court File No. 48 at 5, FN. 4). However, Plaintiff previously conceded the arbitrary and capricious standard of review was the appropriate standard of review (*id.*; *see also* Court File No. 57 at 14, Transcript).

when evaluating whether an administrator's decision was arbitrary and capricious. *Id*. at 298-99.

## III. DISCUSSION

When interpreting a Plan such as this one, "general principles of contract law dictate" that the Court start with the plain language of the Plan itself. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000). This allows the Court to "construe [the] ERISA plan with a view toward effectuating its general purpose." *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir. 2006). If the language of a plan is ambiguous, the Court should apply the doctrine of *contra proferentum* and construe the policy language against the drafter. *Osborne v. Hartford Life and Acc. Ins. Co.*, 465 F.3d 296, 300 (6th Cir. 2006). Here, however, the parties do not dispute the plain language of the Plan. They agree that the relevant portion of the Plan clearly states "[t]he Monthly Disability Benefit for any month [an employee] is [d]isabled is the Gross Disability Benefit [or LTD benefit] minus Other Income Benefits and the Calculation for Optimum Ability." AR at 243. When a Plan participant receives "Other Income Benefits" such as worker's compensation benefits in a lump sum, such "lump sum will be prorated over the period for which the sum is given." *Id.* at 238. Finally, as Defendant points out, the Plan provides the maximum benefit period ends on "the employee's 65th birthday or on the date the 42nd monthly benefit is payable" if disability commences before age 63. *Id.* at 244.

Nonetheless, the parties do dispute how LINA should calculate Plaintiff's monthly LTD benefits in light of the lump sum provided by the worker's compensation settlement order. Specifically, Plaintiff and Defendant disagree regarding the period for which the lump sum was given. Still, "disagreement between parties as to an interpretation of the language does not create

7

ambiguity in the legal sense." *Marquette General Hosp. v. Goodman Forest Indus.*, 315 F.3d 629, 633 (6th Cir. 2003).

In the Chancery Court's order, that court specifically found Plaintiff was entitled to a settlement of $90,000.00, which "represent[ed] a 41.5% permanent partial disability to the body, or compensation for 166.35 weeks." AR at 381. This amount was to be paid to Plaintiff in a lump sum after payment of $18,000.00 in attorney's fees and $385.43 in litigation expenses. *Id.* at 382. It is clear the settlement was intended to represent compensation for a period of 166.35 weeks at a weekly rate of $541.00. *Id.* at 380.

LINA, however, proposes the net lump sum of $71,614.57 should be prorated over a shorter period of 132.37 weeks instead of 166.35 (Court File No. 93). Plaintiff correctly states this is a "period of time not stated anywhere in the worker's compensation settlement order" (Court File No. 92). Nonetheless, LINA argues "the period and the weekly rate are both defined in the [worker's compensation settlement order] as 166.35 weeks and $541.00 ($90,000/166.35), respectively" (*id.* at 3). By prorating the lump sum over a period of 132.37 weeks, the Plan can offset the worker's compensation settlement at a weekly rate of $541.00, without collecting more than the $71,614.57 (*id.*).

In response, Plaintiff argues her worker's compensation settlement should be prorated for the entirety of Plaintiff's expected life (Court File No. 92). As cause, Plaintiff refers to the language in the worker's compensation settlement which provides "the Plaintiff/Employee shall receive a net amount of Seventy-One Thousand Six Hundred Fourteen and 57/100 Dollars ($71,614.57) which represents Fifty-Five and 42/100 Dollars ($55.42) per week over the remaining life expectancy of Plaintiff and represents income replacement." *See* AR at 382. Plaintiff avers Defendants should not

be able to "take advantage of the worker's compensation pro-ration clause" only in regards to the SSDI offset, "but . . . ignore that language as it applies to the worker's compensation settlement funds themselves, in order to also take the largest possible offset of those benefits" (Court File No. 92 at 9). Rather, LINA should have to apply the language consistently to both the SSDI benefits and the worker's compensation benefits, for the purpose of offsets.

However, the Court finds Plaintiff's reliance on the "life expectancy" language in the Chancery Court order to be misguided. There, the Chancery Court specifically addressed the worker's compensation settlement for the benefit of the Social Security Administration and stated "this provision is for Federal Social Security purposes only and not for any other purposes." AR at 382. As LINA argues, "the Social Security Administration pays Social Security benefits over a person's lifetime until death, so it follows that the worker's compensation offset should also be construed over a person's lifetime for purposes of Social Security" (Court File No. 93 at 9). In contrast, under the clear terms of the Plan, LINA only pays LTD benefits up to the age of 65, not for the life expectancy of an employee. AR at 244. Therefore, Plaintiff asks the Court to use a method of calculation that is not supported by the plain language of the Plan. The Court agrees it would be "inequitable" and contrary to the rules of contract construction to adopt Plaintiff's analysis (Court File No. 93 at 9).[2] Furthermore, at the time the Chancery Court entered its order, Plaintiff was not receiving LTD benefits from LINA. *See* AR at 384. Therefore, the Chancery Court would not have had those benefits in mind when making its determination.

---

[2]Defendant alleges under such method of calculation, "Lina would only recover approximately $30,000 out of the $71,614.57 it is entitled to recover during the contract period" (Court File No. 93).

On the other hand, the Court finds LINA's method of calculation to be rational in light of the plain meaning of the Plan. Although the clearest result would be for LINA to prorate Plaintiff's lump sum over a period of 166.25 weeks, this would possibly cause LINA to collect the entire $90,000.00 settlement and such result would be to the detriment of Plaintiff (Court File No. 93).[1] Instead, LINA reduced the period to ensure that it did not collect more than the net amount actually received by Plaintiff. Given there is no indication LINA has acted in bad faith, the Court finds LINA has offered a reasoned explanation for employing its method of calculation based on the plain meaning of the Plan. *See Skiles v. E.I. Dupont de Nemours & Co.*, No. 1:03-CV-239, 2005 WL 991661, at *2 (E.D. Tenn. January 25, 2005). Even though there may be an equally rational method of calculating Plaintiff's benefits, the Court does not find Defendant's methodology to be arbitrary or capricious.

**IV.   CONCLUSION**

For the foregoing reasons, the Court finds LINA's method of calculating Plaintiff's net LTD benefits is rational in light of the Plan. Accordingly, the Court will **DENY** Plaintiff's motion for judgment on the record (Court File No. 91). Because there are no other matters ripe for adjudication, the Court will **DIRECT** the Clerk of the Court to **CLOSE** the case.

**An Order shall enter.**

                                        **/s/**
                                        **CURTIS L. COLLIER**
                                        **CHIEF UNITED STATES DISTRICT JUDGE**

---

[1] This, of course, assumes LINA would be collecting at a weekly rate of $541.00.